GEORGE DIRKS ET AL., APPELLEES, V. ENSIGN OMNIBUS & TRANSFER COMPANY, APPELLANT.

FILED JANUARY 26, 1922.    No. 21859.

1. **Negligence: INSTRUCTION.** In an action involving the question of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff, it is not error on the part of the court to instruct the jury as to the effect of defendant's violation of a statute or ordinance, and make no reference to the plaintiff in regard thereto, when the evidence fails to show any such violation on the part of the plaintiff.

2. **Master and Servant: NEGLIGENCE OF CHAUFFEUR: EVIDENCE.** In order to hold the owner of a car liable for the tortious acts of another driving or operating the same, it must be shown that the party driving or operating the car was at the time the servant or agent of the owner, and was driving or operating the car in the owner's service. The fact that the person operating or driving the car had been recently in the employ of the owner, that the car was being used in the manner and in the locality where the owner usually used the same, and for a purpose not inconsistent with the owner's business, is evidence of employment and service to be considered by the jury.

3. **Corporations: ADMISSIONS OF AGENTS.** Admissions made by the officer or agent of a private corporation, relative to any matter over which he has control or authority to decide and act upon, are binding upon the corporation

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Affirmed.*

*Max V. Beghtol, Carl E. Sanden* and *Carlisle L. Jones,* for appellant.

*Claude S. Wilson* and *Albert S. Johnston,* contra.

Heard before LETTON, DAY and DEAN, JJ., DILWORTH, District Judge.

DILWORTH, District Judge.

Appellees are partners, doing business at Deshler, Nebraska, under the firm name of Deshler Motor Company. On February 20, 1920, at about 1 o'clock p. m., appellee Fred W. Lentz was driving a Dodge automobile eastward on A street in Lincoln, Nebraska. With him were three ladies and a child. A street runs east and west, and is intersected by Twentieth street running north and south. Lentz states, and it is not disputed, that he was driving along the south side of A street at about 12 or 14 miles an hour; that when he got within about 12 feet of Twentieth street he saw a Ford truck coming south along the east side of that street; that the truck was a car length or two south of the alley in the block between A and B streets; that he considered he had plenty of time to cross Twentieth street, and when he was almost to the center of the intersection he realized the rate of speed the truck was running, which was from 25 to 30 miles an hour; that all he could then do was to go ahead and try to get out of the way; that he started his car up, but had not proceeded a car length before the truck struck his car at about the middle, throwing it over on the curb at the southeast corner of the intersection; that the truck struck the Dodge head-on; and that there was plenty of room for the truck to have gone to the rear of the Dodge. The ladies in the car with Lentz gave the same account as to how the accident occurred. Lentz immediately after the collision asked the driver of the truck why he ran into him. The driver replied that the brakes on the truck were out of order and he could not stop it. Lentz says he examined the brakes on the truck and found that they were out of order, and would not work so as to hold the machine. Major Gross, a police officer, who came on the scene within 10 minutes after the accident, asked the driver of the truck how fast he

was going and why he did not stop. The driver replied that he was going 25 miles an hour, and that the brakes on the truck were out of order. The Dodge car ·was badly wrecked, and this action was started to recover for damages done the car, in the sum of $1,000.

The appellant filed an answer to the petition of the appellees, in which, after admitting that plaintiffs are partners and defendant is a corporation, denies each and every allegation of the petition. It also alleges further that "any damage or injury caused to the plaintiff by the collision referred to in plaintiff's petition was caused solely by the gross negligence of the plaintiff himself, and not by any negligence on the part of the defendant." Appellant introduced evidence of how the collision happened.

O. H. Lewis was called as a witness by the appellant. He testified that he was a salesman in the employ of the Marshall Oil Company, had driven a car about eight months, and on the day of the accident was driving his Ford car east on A street behind the Dodge car, and was about three-fourths of a block or a block away from the scene of the accident when it occurred. He corroborates Lentz as to the rate of speed the latter was driving until he got to about the width of the courtroom of the intersection with Twentieth street, when he saw appellee start his car up to between 20 and 25 miles an hour; that he also noticed the Ford truck at that time, and it was about the same distance north of the intersection as the Dodge was west thereof; that the speed of the truck was between 15 and 18 miles an hour; and that he saw the truck try to slow down and turn to the east and "sideswat" the other car.

There is a jog in Twentieth street at its intersection with A to such an extent that the east line of Twentieth street north of A street would be the west line of Twentieth street south of A. Appellant showed by its employees that the brakes were tested when the truck was dragged into the repair shop, and were found to

work all right. The jury in rendering its verdict, in favor of the appellees, determined that it was the negligence of the driver of the truck that caused the collision. From the evidence we do not see how the jury could have determined otherwise.

Appellant complains of instruction No. 8 given by the court on its own motion. While admitting that the instruction stated the law correctly, yet appellant insists that, in referring to the defendant (appellant) solely, it was prejudicial. The instruction complained of reads as follows:

"In determining whether the driver of the truck was guilty of negligence you may consider the provisions of the Nebraska statute regulating the use of motor vehicles on the streets of cities, which statute provides that no motor vehicle shall be operated within any city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person. In this connection you may also consider the provisions of the ordinances of the city of Lincoln relating to the use of streets and the operation of vehicles which have been introduced in evidence herein; and if you find, from a preponderance of the evidence, that the driver of the truck in question, at the time of the collision in question, was violating any of said provisions of the statute of the state of Nebraska or said ordinances of the city of Lincoln, then such violation will be evidence of negligence on his part from which you may find that he was guilty of negligence."

This instruction relates solely to the violation of the state law or city ordinance regulating motor vehicles by the driver thereof, and tells the jury that, if they find that the driver of the truck was at the time of the collision violating any such law, they could then find him guilty of negligence. The objection offered is that it is made to apply to the driver of the truck, and not to ap-

pellees. It is true that the instruction refers to the driver of the truck only, but it was proper under the facts as shown by the evidence. Whatever negligence the appellee Lentz may have been guilty of, it was not shown that it resulted from the violation of any state law or city ordinance. Therefore, such an instruction would not be applicable to appellees.

On the other hand, the undisputed evidence and the physical facts show that the driver of the truck was violating the ordinance of the city of Lincoln at the time. The ordinances of the city of Lincoln were introduced in evidence. They provide that the operator of a motor car approaching an intersection shall yield the right of way to any vehicle approaching from the right. This the driver of the truck did not do. The speed should not exceed 20 miles an hour. The driver of the truck admitted that he was going at least 25 miles an hour. Motor vehicles must use the right-hand side of the street. The fact that the Dodge car lay on its side at the southeast corner of the intersection shows clearly that the truck must have been coming along the left-hand side of Twentieth street. The evidence warranted the instruction as given. The record does not show that appellant asked to have it modified before given, or offered any instruction to cover the subject as he thought it should be. He is not in a position to now complain.

Appellant raises the question as to whether the driver of the truck was in its employ at the time, and was engaged in its business. These are questions of fact, to be determined as other questions of fact by the jury. It is conceded that the truck in question was owned by the appellant, and was being operated by the driver with its knowledge and consent. It is shown by the evidence offered by the appellant that the driver was an "extra man" employed by appellant by the hour. Appellant insists that at the particular time under consideration the driver was not in its employ, and was not engaged in its business, i. e., baggage and passenger transfer.

In order to hold the owner of a machine liable for negligence of an employee driving or operating it, the burden is on the plaintiff to show that such person is the agent, servant or in the employ of such owner, and was at the time operating or driving the same in the service of the owner. Quite frequently this is very difficult, if not impossible, for the plaintiff to prove. The knowledge is often solely in the other party, or under such party's control, and can only be obtained from unwilling and unfriendly witnesses. This places the plaintiff in an unfair and unjust position. To obviate this, the courts of several states have announced the proper rule to be that, when the plaintiff has shown who was the owner of the car, that the driver was or very recently had been in the employ of such owner, and that at the time of the tortious act complained of the car was being driven or operated in the locality in which the owner used such car, and the use of the car at such time was consistent with the business engaged in by the owner of the same, then the burden is on the owner to show that the driver was not at the time in his employ, or was not engaged in driving or operating the car in his service. The case of *Long v. Nute*, 123 Mo. App. 204, cited by appellees in their brief, states the correct rule very clearly in these words:

"Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of. It would be a hard rule, in such circumstances, to require the party complaining of the tortious acts of the servant to show by positive proof that the servant was serving the master and not himself, and the fact that the chauffeur made a detour from the

direct route from defendant's home to the fair grounds does not change the presumption or relieve the master's liability for injuries caused by careless driving."

The same rule is held by the court of Washington, in *Burger v. Taxicab Motor Co.*, 66 Wash. 676; and of Oregon in *West v. Kern*, 88 Or. 247, L. R. A. 1918D, 920; also by the courts of Georgia, Pennsylvania, Texas and Colorado.

As further evidence of the employment and services of the driver of the truck, appellee Lentz, Robert Kimball, husband of one of the ladies in the Dodge car at the time of the collision, and F. R. Elston, each testified to a conversation had with the president of appellant company, at its office, on the second day after the occurrence, regarding the same; that Terry, the president of appellant company, then stated that he considered one driver as much at fault as the other, and, when the speed of the truck was mentioned, he stated that the truck could not have been going 25 miles an hour because it had stopped at a house upon the hill to deliver a trunk, and therefore could not have picked up that much speed in so short a distance. Terry denies making any such statement or admission, and is supported by a number of employees of the company, who testified that they were present and heard no such statement made. They state, however, that the conversation took place on the afternoon of the collision. They are positive as to the time. On the other hand, appellee Lentz, Kimball and Elston are positive the conversation took place the second day after, and that they were there but once. Appellant's employees were so indefinite as to other parts of the conversation heard by them that it may be they were mistaken as to the date or the persons who were present.

Appellant insists that, even if Terry did make such admission or statement, the appellant company would not be bound by them, and that they should not be considered as evidence. We do not consider such to be the

rule.  He was the president of the company, had charge of its affairs, and it was his duty as an officer of the company to investigate, consider and pass upon the matter under consideration, and decide as to the position of the company in relation thereto.  Any statements that he might make in regard thereto would be binding upon the company.  22 C. J. 388.

Appellant called as a witness one Hampton, one of its employees, who at the time of the collision had charge of the drivers for the company and directed their movements.  He testified that the name of the driver of the truck was Brown; that Brown was an extra man, one whom they hired by the hour when they needed additional drivers; that Brown had worked some that morning for the company; that at noon on the day of the accident Brown asked to borrow the truck to go on a personal errand to see about getting a job; that he let him have the truck for that purpose; that Brown did not take a trunk with him for delivery.

In this case there is a conflict of evidence as to the employment and service of the man Brown, who was not called as a witness.  It was for the jury to decide. While we might not have come to the same conclusion as the jury, relative to the employment and service of Brown, yet there was evidence to support their finding, and we shall not disturb the same.

We find no error in the trial of this case, and the judgment of the district court is, therefore,

AFFIRMED.